UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                    **DECISION AND ORDER**

v.

                                             11-CR-00381(A)(M)

VICTOR MARSHALL, et al.,

_____

        This case was referred to me by Hon. Richard J. Arcara, in accordance with 28 U.S.C. §636(b), for supervision of all pretrial matters [5].[1]  Before me is the government's second motion for an order authorizing the taking of a DNA sample from defendants Gerry Spencer and Alexy Diaz through the use of buccal swabs [75].[2]  Oral argument was held before me on August 7, 2012 [91].  For the following reasons, the government's motion is granted.

## BACKGROUND

        The factual  background of this case is set forth in my July 20, 2012 Decision and Order [74], in which I denied  the government's first motion for an order authorizing the taking a DNA sample from defendants, without prejudice,  concluding that the return of an indictment charging defendant with possession of  firearms did  not, standing alone, create reasonable individualized suspicion that probative evidence would be discovered from defendants' DNA samples:

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      Since defendants Diaz, Marshall and Pena failed to file papers in opposition to the government's motion [75], and did not participate at oral argument, I granted the government's  motion [75] as to them.  August 15, 2012 Text Order [92].  Subsequently, I granted defendant Diaz's unopposed *nunc pro tunc* motion for joinder in defendant Spencer's opposition and rescinded my earlier text order [92] granting the government's motion as to him. August 16, 2012 Text Order [94].   I have also stayed my order [92] granting the government's motion [75] as to defendant Marshall because of an attorney representation issue.

"Without evidence that the DNA samples recovered from the firearms are of a sufficient quality to be used for comparison purposes with the DNA the government seeks to obtain from the defendants, there is nothing to suggest that compelling defendants' DNA will lead to probative evidence in this case. The government has inexplicably failed to submit an affidavit from a qualified individual addressing this issue in its reply or to offer any explanation for why the samples would not be suitable for entry into CODIS, yet be sufficient to permit the Police Lab to determine whether the samples are a match to the DNA the government seeks to compel from the defendants" (id., pp. 5-6).

In its renewed motion, the government now submits an affidavit from Jodi Luedemann [75-2], a forensic biologist employed by the Erie County Central Police Services Forensic Laboratory, explaining that "the only firearm DNA samples which do qualify for submission to CODIS are cases wherein a firearm was utilized in a violent crime such as a homicide, rape, or assault" (id., ¶8), which is inapplicable in this case. Ms. Luedemann also states that she "extracted DNA from the swabs of each of the firearms . . . and, based on the [polymerase chain reaction ("PCR")] results, DNA profiles from each of the firearm swabs revealed a mixture of DNA", and that "known samples are required for further comparison" (id., ¶10).

Attached to Ms. Luedemann's affidavit is her January 13, 2012 Analysis Report, which states that "a mixture of DNA from at least five unknown individuals, including at least one male individual" was recovered from the Russian Model SKS semi-automatic rifle, that "a mixture of DNA from at least four unknown individuals, including at lease one male individual" was recovered from the Sturm Ruger revolver, and that "a mixture of DNA from at least four unknown individuals, including at least one male and one female individual" was recovered

from the Remington Arms shotgun.[3]   Ms. Luedemann states that "[i]n a case where is

insufficient DNA, or negative results, or inconclusive results, the report . . . would have stated

that there is either insufficient DNA for inclusionary reporting, or that no DNA profile was

obtained". [75-2], ¶11.

AUSA Tripi further states that Ms. Luedemann has advised him "that known

buccal samples from each defendant are necessary for comparison purposes in this case.  Such

buccal samples will be of comparison value because each firearm swab contains sufficient DNA

information to enable her to analyze the DNA mixtures extracted from each firearm and

compare them to each defendant's known DNA profile . . . . [A]fter the laboratory obtains

known DNA samples, the laboratory will be able to determine if a defendant is included or

excluded as a contributor or the DNA profile and, if included, to generate a statistical

probability." Tripi Affidavit [75], ¶17.

Defendant Spencer argues that "[n]either the motion itself, nor Ms. Luedemann's

affidavit, address the core issue that the Court raised in denying the initial motion. Namely, what

is there about the quality of the mixed DNA sample taken from the firearms, that would suggest

with any probability, that they can be *matched* to the defendants [*sic*]  DNA profiles, if said

profiles are provided via buccal swabs".  Defendant Spencer's Memorandum in Response [82],

p. 1 (emphasis in original).  He also disputes the sufficiency of the DNA samples obtained from

---

[3]        Count 10 of the Indictment [1] charges defendants with  possession of firearms in
furtherance of drug trafficking crimes, in violation of 18 U.S.C. §§924(c)(1) and 2. According to the
government, "the Grand Jury has . . . indict[ed] defendants for possessing the firearms, to include, a
Russian Model SKS-45 semiautomatic rifle bearing serial number RH210502, a Sturm Ruger .357
Magnum revolver bearing serial number 160-39435, and a Remington 870 Express Magnum 12 Gauge
Shotgun bearing serial number D407439MA, and four (4) 12 gauge shotgun shells".  Government's
Reply Memorandum of Law [59], p. 3. However, there is no indication that DNA has been recovered
from the ammunition.

the firearms, arguing that "[t]he Police Lab is unable to determine the sex of the individuals, to

tell if there are any individuals in common among three DNA mixtures, or even to identify the

profile of a single individual" (id., pp. 5-6). He further argues that "[e]ven if the DNA mixture is

useable, the requested samples are not 'highly probative'" since "[t]he government application

contains no clues whatsoever as to the complexities and choices that are involved in using the

profile of a mixture  to attempt to access the likelihood that any one person is likely to be

identified as a possible contributor" (id., p. 6).

## ANALYSIS

The government argues that "the appropriate standard is whether there exists

reasonable individualized suspicion that probative evidence will be found as a result of DNA

comparisons". Government's Reply Memorandum of Law [85], p. 2 (*citing* United States v.

Owens, 2006 WL 3725547, *6-17 (W.D.N.Y. 2006) (Arcara, J./Foschio, M.J.)). I agree. The

return of the Indictment, establishing probable cause that defendants Spencer and Diaz

possessed the firearms at issue, coupled with Ms. Luedemann's affidavit establishing that  DNA

samples suitable for comparison were obtained from each firearm that defendants are charged

with possessing, establishes reasonable individualized suspicion that probative evidence will be

found as a result of the DNA comparison.

Defendant Spencer's concern  "that the comparison will not be able to 'match'

anyone, and that the very best that they can claim is that a defendant is 'not excluded'"

(defendant Spencer's memorandum in response [82], p. 4) is misplaced. As noted by the

government, "all of the possible results of the DNA analysis the government seeks to conduct,

either inclusion or exclusion of the defendant's DNA, satisfy the definition of probative evidence."  Government's Reply Memorandum of Law [85], p. 3 (emphasis in original).  No result will be entirely lacking in probative value since,  as Ms. Luedemann explains, "[t]he report generated for analysis of a DNA mixture will read that the individual either can, or cannot, be excluded as a contributor to the DNA mixture.  If an individual cannot be excluded from the submitted evidence, a statistic is calculated to show the significance of the comparison." Luedemann Affidavit [75-2], ¶6.

Moreover, to the extent that comparison testing may reveal "prejudicial and wasteful evidence of an 'inconclusive' determination that particular defendants 'could not be excluded' as the contributors"(defendant Spencer's Memorandum in Response [82], pp. 7-8), he may seek to exclude  that evidence at trial pursuant to Fed. R. Evid. 403.  Defendant Spencer's arguments directed at the  complexities associated with identifying a particular contributor from a mixed sample of DNA likewise go to the weight of this evidence, but do not undermine the government's entitlement to obtain the samples.

## CONCLUSION

For these reasons, the government's motion [75] is granted. Defendants Spencer and Diaz shall provide buccal swabs to law enforcement officers, as directed. These swabs shall be used for the sole purpose of comparing defendants' DNA to the DNA recovered from the firearms which the defendants Spencer and Diaz are charged with possessing.

SO ORDERED.

DATED:        August 22, 2012.

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge